IN THE MATTER OF THE ESTATE OF FULKS



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:IN THE MATTER OF THE ESTATE OF FULKS

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 IN THE MATTER OF THE ESTATE OF FULKS
2020 OK 94
Decided: 11/24/2020
Case Number: 118314 
[1]
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2020 OK 94, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 



In the Matter of the Estate of CHARLES FULKS, deceased.
DOROTHY FULKS, Petitioner/Appellee,
v.
TAMMY MCPHERSON, Heir at Law/Appellant.

APPEAL FROM THE NOWATA COUNTY DISTRICT COURT
Honorable Carl G. Gibson, Trial Judge

¶0 After the decedent, Charles Fulks died, his wife, the petitioner/appellee, Dorothy Fulks, filed the probate of his estate in the District Court of Nowata County, Oklahoma. An heir at law/appellant, the decedent's daughter, Tammy McPherson, objected to the probate in Nowata County. She argued that: 1) the decedent died in Osage County, and all of the decedent's real and personal property was located in Osage County; 2) pursuant to 58 O.S. 2011 §5, the proper venue for the probate was solely in Osage County, Oklahoma; and 3) the cause should be transferred pursuant to the doctrine of intrastate forum non conveniens. The trial court determined that Nowata County was also a proper venue, and it denied the daughter's request to transfer the cause to Osage County. The daughter appealed, and we retained the cause to address where the probate should be brought. We hold that venue is proper in Osage County.

CAUSE RETAINED;
TRIAL COURT REVERSED
AND REMANDED WITH INSTRUCTIONS.

James C. Milton, Aaron C. Tifft. Tulsa, Oklahoma,
Bransford Shoemake, Pawhuska, Oklahoma,
Amanda S. Proctor, Jenks, Oklahoma, for Appellant.
Todd A. Cone, Nowata, Oklahoma, for Appellee.


KAUGER, J.:
¶1 The questions presented are whether: 1) 58 O.S. 2011 §5,[2] which delineates probate venue, requires the probate in this cause to be brought in Osage County, where the decedent died and all of his property was located; 2) Nowata County, where his widow first filed and received letters of administration, is an alternative venue for the probate; or 3) the cause should be transferred because of intrastate forum non conveniens. Venue is proper in Osage County.
FACTS
¶2 The decedent, Charles Fulks (Fulks/decedent), died on February 11, 2013. At the time of his death, all of his real and personal property was alleged to have been located in Osage County, Oklahoma. On June 4, 2019, the petitioner, Dorothy Fulks (petitioner/widow), filed a Petition for Letters of Administration in the District Court of Nowata County, Oklahoma, where she resided after her husband's death. In the petition, the widow listed herself as the surviving spouse of Fulks, and three children: daughters, Tobi Bricker, and Kim Bricker, and son, Charles Cody Fulks. She also stated that no will had been found, and that the decedent died intestate. She did not disclose the residency of her husband in her petition, nor did she subsequently disclose or argue that her husband had ever resided in Nowata County, Oklahoma.
¶3 The widow asked to be appointed Personal Representative of the decedent's estate. The trial court set the matter for hearing on July 2, 2019. On July 1, 2019, the appellant, Tammy McPherson (McPherson/daughter), filed a special appearance and reservation of time to answer in Nowata County. She identified herself as another daughter of the Fulks who was an "heir at law" and a lawful devisee and legatee named under the decedent's last Will and Testament. McPherson also requested a continuance of the July 2, 2019, hearing. On July 2, 2019, McPherson filed a Motion to Dismiss, arguing that: 1) the decedent did not die intestate; 2) she is a named heir in decedent's will; 3) all of the decedent's real and personal property was located in Osage, County, Oklahoma; and 4) the proper venue for the probate lies in Osage County, and even if it did not, the cause should be transferred to Osage County because intrastate forum non conveniens.[3]
¶4 McPherson attached a copy of decedent's will dated September 26, 2011. The will lists the widow as Personal Representative, with McPherson as a the successor Personal Representative, should the widow be unable or refuse to serve. Also on July 2, 2019, the widow filed an Application for Appointment of Special Administrator. She requested that she be appointed Special Administrator immediately so that she could assess, protect, and preserve all of decedent's assets. According to a court minute, and a court order both filed July 2, 2019, the trial court, with no one appearing to object, appointed the widow as Personal Administrator. The trial court also determined that Nowata County was a proper venue, and it issued Letters of Special Administration the same day.
¶5 On July 15, 2019, the widow filed a "Motion for an Order to Produce Last Will and Testament." She alleged that McPherson had removed her from the family home immediately after the decedent's death without most of her personal belongings, and without the property of her spouse of fifty-one years. She requested that the trial Court order McPherson to deliver the decedent's will. The next day, the widow filed a response to McPherson's motion to dismiss, arguing that: she had the option of choosing where to file the probate for her convenience; venue was proper in Nowata County; and McPherson was the only one complaining.
¶6 On July 29, 2019, the widow filed a "Request for Citation to Appear" asking the trial court to order McPherson to appear because she had concealed, embezzled, smuggled, conveyed, and disposed of decedent's property. She also suggested that there was a question of whether McPherson was the biological child of the decedent. The trial court set a hearing for all pending matters on August 13, 2019, but the cause was reset for August 15, 2019. On August 15, 2019, it overruled McPherson's motion to dismiss, and sustained the petition and appointments of the widow. The court minute reflects that a copy of the will was submitted and filed with no objection.
¶7 On August 16, 2019, the widow filed an "Amended Petition for Admission of the Last Will and Testament to Probate and Letters Testamentary." naming all four children as heirs at law. The trial court set the matter for hearing on August 28, 2019, which was passed by agreement until September 10, 2019. On September 10, 2019, the trial court issued an order again overruling McPherson's motion to dismiss and appointing the widow as Personal representative. It appears, based on the arguments and authority presented to the trial court, that its ruling was based on the recent opinion of the Court of Civil Appeals in In re Estate of Walker, 2018 OK CIV APP 63, 439 P.3d 424 which was released for publication by the Court of Civil Appeals, without a petition for certiorari being filed in this Court. The Court of Civil Appeals held that the Legislature had amended the statute so that probate could be filed in any county. However, the trial court, applying an unusual rationale, also determined that the testator died intestate, noting:
The Court, after hearing evidence, and announcement and stipulation of counsel, finds the parties have stipulated that the paper or instrument propounded herein for probate as the Last Will and Testament of said deceased, which Will is dated September 26, 2011, was duly executed by Charles Fulks, and that at the time of executing the same, the Testator was full age, of sound mind and memory, and was not acting under duress, menace, fraud, or undue influence, and that the Will was executed in all particulars as required by law. However, although the authenticity, capacity, and testamentary provisions have been proved and agreed by the parties, at this time, there is no testimony that the will was in existence at the time [of] testator's death. Therefore, the estate of Charles Fulks, as of this time, will be administered as an intestate estate.
The daughter appealed on October 10, 2019, and we retained the appeal on May 12, 2020, to address whether renumbering of 58 O.S. 2011 §5[4] changed the priority of proper probate venue. The cause was assigned to this chamber on May 21, 2020.
I.
UNDER THE FACTS OF THIS CAUSE, VENUE IS
PROPER IN OSAGE COUNTY. 
¶8 The widow argues that: she chose where to file her husband's probate for her convenience and cost; and that because the application for letters occurred first in Nowata County, the cause should remain there. She primarily relies on both the probate venue statute, 58 O.S. 2011 §5,[5] coupled the recent rationale of the Court of Civil Appeals opinion, In re Estate of Walker, 2018 OK CIV APP 63, 439 P.3d 424, as persuasive authority.[6] The daughter argues that the litany of venue options provided by the statute is in a prioritized order, and that he resided and died in Osage County, and all of the decedent's real and personal property is located in Osage County, the cause must be transferred to Osage County.
¶9 Probate proceedings are of equitable cognizance.[7] We presume that the trial court's decision is legally correct and we will not disturb the trial court's decision unless it is "found to be clearly contrary to the weight of the evidence or to some governing principle of law."[8] This matter also involves questions of statutory interpretation and harmonization. We are required to review questions of law, such as the construction of statutes, under a de novo standard of review.[9]
A. TITLE 58 O.S. 2011 §5 HAS REMAINED RELATIVELY UNCHANGED
SINCE ITS ENACTMENT. A PUBLISHER'S MODIFICATIONS CANNOT CHANGE A STATUTE'S SUBSTANTIVE MEANING.
¶10 Title 58 O.S. §5 was originally enacted in 1910 as, Ch. 64, Art.1 §6193. It was taken from South Dakota and California statutory provisions,[10] and it provided as follows:
Venue of Probate Acts. Wills must be proved and letters testamentary or of administration granted:
First. In the county of which the decedent was a resident at the time of his death, in whatever place he may have died.
Second. In the county of which the decedent may have died, leaving an estate therein, he not being a resident of the State.
Third. In the county of which part of the estate may be, the decedent having died out of State, and not a resident thereof at the time of death.
Fourth. In the county in which any part of the estate may be, the decedent not being a resident or the State, but dying within it, and not leaving estate in the county in which he died.
Fifth. In all other cases, in the county in which letters of administration is first made. (Emphasis in original).
¶11 By 1941, the statute had relocated to 58 O.S. 1941 §5.[11] Without any Legislative amendment, the publishing company changed the numbers in the statute from written numbers, to numerical symbols.[12] Generally, a publisher's correction becomes part of the statute if the publisher did not change the substantive meaning of the statute as it was originally intended by the Legislature.[13] Consequently, the changes from the word "First" to the numeral "1" became part of the statute. The Legislature did not make any amendments to the statute until 1982, nor have they made any since 1982.
¶12 The 1982 amendments were small changes intended to clarify language relating to residency requirements.[14] Title 58 O.S. Supp. 1982 §5, reads the same as the current version.[15] Consequently, the publisher's changes from words such as "First" to "1" has no effect on the statutes' substantive meaning. Our precedents vary on construction of §5 based on the variation in facts and circumstances. The present question has never been addressed by this Court based on the change from written to numerical designations. We would not do so now but for the recent opinion of the Court of Civil Appeals in In re Estate of Walker, 2018 OK CIV APP 63, 439 P.3d 424 in which the Court of Civil Appeals held that the Legislature had amended the statute so that probate could be filed in any county. We do not agree with this premise, it is overly broad and statutorily inconsistent.
II.
THE COUNTY IN WHICH THE DECEDENT RESIDES WHEN THE DEATH OCCURS IS THE PROPER COUNTY FOR VENUE OF THE PROBATE. 
¶13 The probate of the decedent's estate falls into two categories: either the decedent was a resident of the State of Oklahoma at the time of death,[16] or the decedent was not a resident of the State of Oklahoma at the time of death. Of the litany of five items in 58 O.S. 2011 §5, subsections 1 concerns when the decedent is a resident of Oklahoma at the time of death; 2-4 all concern when the decedent was not a resident of Oklahoma at the time of death; and 5 is a catch-all provision for "all other cases."[17]
¶14 Subsection 1 provides that probate must be in the county of which the decedent was a resident at the time of his death, regardless where he or she died. Subsection 2 applies when a decedent dies in an Oklahoma County, and has left an estate in that county, but the decedent was not a resident of Oklahoma at the time of death. Subsection 3 concerns a decedent who has an estate in an Oklahoma County but dies out of state and was not a resident of Oklahoma at the time of death. Subsection 4 applies when a decedent leaves an estate in an Oklahoma County, was not a resident of Oklahoma at the time of death, but died in Oklahoma in another county than where the estate was located.[18] Subsection 5 applies "in all other cases" the county where letters of administration is first made.
¶15 Nevertheless, §5 cannot be read in isolation because there are three provisions relating to venue in the Probate Code.[19] Section 6 concerns the circumstances in which a decedent is not a resident of Oklahoma at the time of death. It provides that:
When the estate of the decedent is in more than one county, he having died out of the state, and not having been a resident thereof at the time of his death, or being such nonresident and dying within the state, and not leaving estate in the county where he died, the district court of that county in which application is first made for letters testamentary or of administration, has exclusive jurisdiction of the settlement of the estate.
Title 58 O.S. 2011 §7 provides that:
The district court of the county in which application is first made for letters testamentary or of administration in any of the cases above mentioned, shall have jurisdiction coextensive with the State in the settlement of the estate of the decedent and the sale and distribution of his real estate and excludes the jurisdiction of the district court of every other county.
This Court, in State ex rel. Monahawee v. Hazelwood, 1921 OK 103, 196 P. 937 recognized the efficacy of §7's applicability to probate venue when it is unclear where, exactly, the decedent resided within Oklahoma at the time of death. Monahawee concerned a Native American's probate conflict between two courts -- Osage County and Okmulgee County. Osage County was the first Court to issue letters of administration. The Court held that:
¶4 From the foregoing provisions it seems quite clear that when the county court of Okmulgee county took jurisdiction of the administration proceedings in the instant case, such jurisdiction was co-extensive with the state and excluded the jurisdiction of the county court of every other county. It is not only the rule made so by statute, but, on the ground of public policy, was the rule at common law. Dobler v. Strobel, 9 N.D. 104, 81 Am. St. Rep. 530-5, 81 N.W. 37. When the county court of Okmulgee county took jurisdiction of the estate of Lete Kolvin, deceased, and appointed an administrator therein, such taking of jurisdiction and such appointment of administrator were the finding of every jurisdictional fact necessary to such an appointment.
¶16 In subsequent cases, the Court adhered to the principle that venue of probate, as set by statute, generally lies foremost in the county where the decedent resided at the time of death.[20] These cases held that if the decedent was a resident of Oklahoma when the death occurred and the decedent died within the State of Oklahoma, location of the decedent's assets was of no consequence. Only the residence of the decedent at the time of death was the determinative factor.[21]
¶17 However, a problem arises when residency is unclear, and two counties are in conflict over a decedent's residency, and one of the counties issues letters of administration first. In some cases the Court has noted that, the venue of that county court is presumed as a proper and cannot be collaterally attacked by appeal.[22] For example, in Whitney v. Cook, 1956 OK 302, ¶¶4-6, 303 P.2d 1116, another case involving a conflict of jurisdiction and venue over a probate case, the Court explained, relying on previous cases, that:
The rule is well-settled that when there is presented an intolerable conflict between two courts, each attempting to exercise jurisdiction in the same cause and between the same parties, that this court must determine where the jurisdiction or venue lies and issue its writ accordingly. The rule is also recognized that when either of two or more courts of equal jurisdiction might originally have acted in the matter, and proper resort has been had to one such court, and that court has assumed full jurisdiction and has acted and is acting in the matter, that other courts of equal jurisdiction should be barred from action in the same matter. . .
The granting of letters of administration by a county court imports jurisdiction in the court so to do, and it will be inferred from the fact that such letters were granted that a resident decedent whose estate is being administered died a resident of the county in which letters of administration are first granted.
¶18 However, we have also had previous cases wherein exceptions were recognized where the will was admitted to probate, but the evidence appeared on the face of the pleadings to support proper venue in only one county. In James v. Sanders, 1923 OK 690, ¶2, 218 P.877, the Court addressed a conflict in probate jurisdiction in Love County and Carter County. The decedent lived at a sanitarium in Carter County, but before her death, moved to Love County, but then returned to Carter County where she died. The Court held that:
We have carefully considered the evidence in the record, and while it may be conceded that there is evidence tending to show that Cora James left the sanitarium at Talihina with the intention of making her home with Dora Sanders in Love county, yet we are unable to wholly ignore the undisputed testimony that shows that she was anxious, after having resided for 12 days on the farm of the petitioner in Love county, to return to the academy, where she had been reared, educated, and given a home from early childhood until she had reached majority and until she was sent to the sanitarium as a patient. It is our conclusion that this testimony conclusively establishes the fact that it was her intention in returning to this academy to continue to live there the remainder of her life and to constitute the same as her permanent residence and home. In view of this conclusion it necessarily follows that the judgment of the trial court must be reversed. It may well be observed that the judgment of the district court would not be sustained for another reason--that the will admitted to probate had been legally revoked. But, in view of the conclusion reached as to the jurisdiction of the county court of Love county, it is unnecessary for any further discussion of this proposition. The judgment of the district court of Love county is reversed, and the cause is remanded, with directions for said court to enter an order remanding cause to county court, with directions to dismiss the petition for the probation of the will in Love county.
¶19 In Anderson v. Jackson, 1935 OK 170, ¶9, 41 P.22d 815 and Breedlove v. Tulsa County, 1930 OK 1101, ¶11, 58 P.2d 305, the Court held that the clear weight of the evidence established only one county as proper venue. In Anderson, all of the evidence established that the decedent died in McCurtain County and not in Choctaw County where the probate was filed. Similarly in Breedlove, first Tulsa County, and then Sequoyah County asserted jurisdiction in the same probate estate. While some evidence was presented that the decedent was a resident of Sequoyah County at the time of death, the weight of the evidence showed that he actually resided in Tulsa County at the time of death, thus Tulsa County was the proper venue.
¶20 The question of the necessity for the appointment of an administrator is within the exclusive original jurisdiction of the district courts.[23] Nevertheless we must reconcile our previous cases with 58 O.S. 2011 §5, §6, and §7. We must acknowledge that the statutes collectively require venue first and foremost in the county where the decedent resided at the time of death. The subsections of §5, along with §6 and §7, clarify merely what happens on those occasions when the decedent either dies out of state, but resided and owned property in Oklahoma at the time of death; or leaves an estate in an Oklahoma county, but dies in another Oklahoma county or out of State.
¶21 If the conflicting evidence is unclear as to the decedent's actual residency, then pursuant to 58 O.S. 2011 §7, the jurisdiction of district courts to probate are co-extensive, and once a district court which appears to be a proper venue asserts jurisdiction, and then issues letters of administration, that court has jurisdiction exclusive of all others.[24] To construe these statutes otherwise would make the language of all three statutes superfluous. We never presume the Legislature has done a vain and useless thing.[25]
¶22 Here, the evidence points only to Osage County as both the residence of the decedent and the county in which he died. Consequently, this cause should have been brought in Osage County. Because no conflict of the decedent's residency even appears, those cases in which a collateral attack on the jurisdiction or venue of the probate court is prohibited are inapplicable. The matter may not be collaterally attacked on appeal where it genuinely appears on the face of the record that two different counties might have been the residence of the decedent at the time of death and one county determines it has jurisdiction and issues letters of administration first.[26] This does not mean that probate may be brought anywhere one wishes.
¶23 In In re Estate of Walker, 2018 OK CIV APP 63, 439 P.3d 424, the Court of Civil Appeals addressed the venue of probates. Like this cause, Walker, supra, also involved the request to transfer a probate case based upon a change of venue after administration of letters were first made. The Walker Court noted the original statutory enactment of 1910, but it incorrectly assumed that the Legislature subsequently amended the statute to removing priority language of "First, Second," etc. Thus, Walker's holding that a priority no longer exists in the statute because of a legislative amendment, and that a probate action may be filed in any of the applicable situations listed in §5, was based on an incorrect assumption. As a result, the rule suddenly became that probate venue was proper anywhere in the State of Oklahoma. To the extent that Walker is inconsistent with this opinion it is hereby overruled. Because we hold that Osage is the only proper county in which this probate may proceed, we need not address the intrastate forum non conveniens arguments made by the daughter.[27]
CONCLUSION
¶24 Pursuant to §5, venue is prioritized and lies first and foremost in the county where the decedent resided at the time of death.[28] It is only when it appears on the face of the pleadings that evidence is conflicting concerning what county the decedent resided in at the time of death or that the decedent died out of state that, pursuant to 58 O.S. 2011 §§5-7, the jurisdiction of county courts for probate are co-extensive. In the appearance of such a conflict, once a county court asserts jurisdiction, and issues letters of administration, that court has jurisdiction exclusive of all others.[29] Here, only one county, Osage County, is the proper venue. The trial court is reversed, and the matter is remanded Nowata County with directions for the trial court to transfer the cause to Osage County, and to dismiss the Nowata County proceedings.[30]
CAUSE RETAINED;
TRIAL COURT REVERSED AND REMANDED WITH INSTRUCTIONS.
GURICH, C.J., KAUGER, WINCHESTER, EDMONDSON, COMBS, JJ., concur.
DARBY, V.C.J., KANE, ROWE, J.J., (by separate writing) Concur in part; Dissent in part.
COLBERT, J., not participating.

FOOTNOTES

[1] We retained the appeal and made this cause a companion case to No. 118,671, In the Matter of the Estate of Hertzog on May 12, 2020, because both cases involved the exact same issue of interpretation of Title 58 O.S. 2011 §5. The causes were assigned on May 21, 2020, but before the briefing cycle on No. 118,671 was completed, the parties settled their claims on appeal and requested dismissal. We dismissed the companion cause on August 20, 2020.

[2] Title 58 O.S. 2011 §5 provides:
Venue of Probate Acts
Wills must be proved, and letters testamentary or of administration granted in the following applicable situations:
1. In the county of which the decedent was a resident at the time of his death, regardless where he died.
2. In the county in which the decedent died, leaving an estate therein, the deceased not being a resident of this state.
3. In the county in which any part of the estate of the deceased may be, where the decedent died out of this state, and the decedent was not a resident of this state at the time of his death.
4. In the county in which any part of the estate may be and the decedent was not a resident of this state, but died within it, and did not leave an estate in the county in which he died.

5. In all other cases, in the county where application for letters is first made.

[3] Title 12 O.S. Supp. 2013 §140.3, see page 20, infra.

[4] Title 58 O.S. 2011 §5, see note 2, supra.

[5] Title 58 O.S. 2011 §5, see note 2, supra.

[6] Because the opinion was not approved for publication by this Court, it is entitled to persuasive effect only. Title 20 O.S.2011 § 30.5; Rule 1.200, Oklahoma Supreme Court Rules, 12 O.S. 20011, Ch. 15, App. 1.

[7] In re Estate of Holcomb, 2002 OK 90, ¶ 8, 63 P.3d 9; In re Estate of Sneed, 1998 OK 8, ¶ 8, 953 P.2d 1111; In re Estate of Lacy, 1967 OK 123, ¶ 6, 431 P.2d 366.

[8] In re Estate of Holcomb, see note 8, supra; In re Estate of Maheras, 1995 OK 40, ¶ 7, 897 P.2d 268; In re Estate of Eversole, 1994 OK 114, ¶ 7, 885 P.2d 657.

[9] In re Estate of Jackson, 2008 OK 83, ¶ 9, 194 P.3d 1269; St. John Medical Center v. Bilby, 2007 OK 37, ¶ 2, 160 P.3d 978.

[10] Dak. 5656; S 1890, Sec. 1253 and Cal. Code Civ. Pro. Sec. 1294.

[11] It became §1088 in 1921, and then §1069 in 1931, before becoming Title 58 O.S. 1941 §5.

[12] Consequently, the statute, Title 58 O.S. 1941 §5 provided:
Venue of Probate Acts --Wills must be proved and letters testamentary or of administration granted:
1. In the county of which the decedent was a resident at the time of his death, in whatever place he may have died.
2. In the county of which the decedent may have died, leaving an estate therein, he not being a resident of the State.
3. In the county of which part of the estate may be, the decedent having died out of State, and not a resident thereof at the time of death.
4. In the county in which any part of the estate may be, the decedent not being a resident or the State, but dying within it, and not leaving estate in the county in which he died.

5. In all other cases, in the county in which letters of administration is first made. (Emphasis in original).

[13] Independent Finance Institute v. Clark, 1999 OK 43, ¶20, 990 P.2d 845. Title 75 O.S. 1071 § 171, which was repealed in 2012, authorized then West Publishing "Company" to compile, codify and annotate the Oklahoma Statutes according to the terms, specifications and conditions directed by the Speaker of the House of Representatives and the President Pro Tempore of the Senate. Nor does a scrivener's error change the substantive law. In Charleson v. State ex rel. Department of Public Safety, 2005 OK 83, ¶11, 125 P.3d 672, we said that "[i]f a book publisher were to make a scrivener's error in an opinion of this Court, it would not change the efficacy of the opinion. If the company were to misprint a statute enacted by the Legislature, the law passed would not lose its effectiveness. To rule otherwise allows copyists employed by publishers to change the law. That cannot be the case. The Court has also recognized that a statute's incorporation in a decennial compilation purges or cures any procedural defect in the enactment's title that might otherwise invalidate it. Allen v. State ex rel. Bd. of Tr., 1988 OK 99, ¶9, 769 P.2d 1302, 1305. However, we specifically found in Hendrick v. Walters, 1993 OK 162, ¶17, 865 P.2d 1232, 1241-42 that "inclusion in the codification of a statute which has been repealed by substitution does not inevitably give the discarded statute untrammeled viability." See also A.G. Opin 82-20, at 56 ("West Publishing Company has only the authority of a compiler and must compile the statutes exactly as they were enacted by the Legislature, subject only to deleting from the compilation laws which have been repealed or held unconstitutional by the courts of last resort.").



[14] Ch. 176, Oklahoma Session Laws, 1982 states: "AN ACT RELATING TO PROBATE
PROCEDURE ; AMENDING 58 OS.1981, SECTION 5; PROVIDING FOR-PROBATE VENUE, CLARIFYING LANGUAGE CONCERNING RESIDENCY REQUIREMENTS AND DECLARING AN EMERGENCY."
The changes, shown below, and as illustrated on the next page in the 1982 version of the statute include: in whatever place he may have died, he, but dying within it, and not leaving estate in the county in which he died, to regardless of where he dies, the deceased, and but died within it, and did not leave an estate in the county in which he died, respectively.
Title 58 O.S. 1971 §5, with the portions which were changed in 1982 bolded, provided:
Venue of Probate Acts --Wills must be proved and letters testamentary or of administration granted:
1. In the county of which the decedent was a resident at the time of his death, in whatever place he may have died.
2. In the county of which the decedent may have died, leaving an estate therein, he not being a resident of the State.
3. In the county of which part of the estate may be, the decedent having died out of State, and not a resident thereof at the time of death.
4. In the county in which any part of the estate may be, the decedent not being a resident or the State, but dying within it, and not leaving estate in the county in which he died.

5. In all other cases, in the county in which letters of administration is first made. (Emphasis supplied.)

[15] Title 58 O.S.2011 §5 provides:
Venue of Probate Acts
Wills must be proved, and letters testamentary or of administration granted in the following applicable situations:
1. In the county of which the decedent was a resident at the time of his death, regardless where he died.
2. In the county in which the decedent died, leaving an estate therein, the deceased not being a resident of this state.
3. In the county in which any part of the estate of the deceased may be, where the decedent died out of this state, and the decedent was not a resident of this state at the time of his death.
4. In the county in which any part of the estate may be and the decedent was not a resident of this state, but died within it, and did not leave an estate in the county in which he died.
5. In all other cases, in the county where application for letters is first made.

[16] For probate purposes, residency has been equated with domicile. In re Davis' Estate,1935 OK 242, ¶¶6-7, 43 P.2d 115; Richards v. Nuff, 1930 OK 547, ¶¶6-7, 293 P. 102.

[17] Title 58 O.S. 2011 §5, see note 2, supra.

[18] Title 58 O.S. 2011 §5, see note 2, supra.

[19] Title 58 O.S. 2011 §§1 et seq.

[20] In the Matter of Estate of Brown, 1979 OK 128, ¶19, 600 P.2d 857; In re Davis, 1935 OK 242, ¶6, 43 P.2d 115; Presbury v. County Court of Kay County, 1923 OK 127, ¶11, 213 P. 311; James v. Sanders, 1923 OK 690, ¶0, 218 P. 877.

[21] Griffin v. Hannan, 1939 OK 304, ¶14, 93 P.2d 1078; Stock v. Sentinel Rural & Long Distance Telephone Co., 1939 OK 66, ¶3, 87 P.2d 656; Okfuskey v. Corbin, 1935 OK 121, ¶10, 40 P.2d 1064;Wolf v. Gills, 1923 OK 725, ¶6, 219 P. 350. See also, "Necessity and Sufficiency of Assets to Justify Appointment, 59 A.L.R. 87 (1929); But see, In re Carter's Estate, 1925 OK 845, ¶15, 240 P. 727 (No abuse of discretion when court refused probate jurisdiction because old wearing apparel and a watch were not enough to afford adequate appointment of administrator.).

[22] State ex rel. American Flyers Airline Corp., v. Superior Court of Creek County, 1967 OK 144, ¶5, 435 P.2d 131; Sewell v. Christison, 1926 OK 293, ¶6, 245 P. 632; Copeland v. Johnson, 1924 OK 368, ¶18, 224 P.986; Wolf v. Gills, see note 23, supra at ¶¶5-6; See, State ex rel. Monahawee v. Hazelwood, 1921 OK 103, ¶4, 196 P. 937 and Davis v. Sandlin, 1964 OK 123, 392 P.2D 722. Where petition to probate was ambiguous as to testator's residence at death, the Court does not reverse. Kirk v. Alexander, 1935 OK 210, ¶7, 41 P.2 899. The matter is nearly unimpeachable. Sewell v. Christison, supra.

[23] Stock v. Sentinel Rural & Long Distance Telephone Co., see note 21, supra. The Okla. Const. art. 7, §8 provides in pertinent part:
. . .The District Judges and Associate District Judges shall exercise all jurisdiction in the District Court except as otherwise provided by law. The District Courts, or any Judges thereof, shall have the power to issue any writs, remedial or otherwise necessary or proper to carry into effect their orders, judgments, or decrees.

[24] Title 58 O.S. 2011 §7, see page 14, supra.

[25] Bryant v. Commissioner of the Dept. of Public Safety, 1996 OK 134, ¶11, 937 P.2d 496; Rogers v. Higgins, 1993 OK 45, ¶20, 871 P.2d 398; Cooper v. Dix, 1989 OK 55, ¶4, 771 P.2d 614.

[26] State ex rel. American Flyers Airline Corp., v. Superior Court of Creek County, see note 24, supra; Sewell v. Christison, see note 24, supra; Copeland v. Johnson, see note 24, supra; Wolf v. Gills, see note 23, supra at ¶¶5-6; See, State ex rel. Monahawee v. Hazelwood, note 24, supra, and Davis v. Sandlin, see note 24, supra. Kirk v. Alexander, see note 24, supra; and Sewell v. Christison, supra.

[27] We examined this doctrine in Stevens v. Blevins, 1995 Ok 6, 890 P.2d 936. Stevens involved a cause in which the trial court sua sponte decided another county was a more appropriate and convenient venue. We held that the trial court may not transfer the cause on its own motion, rather, the parties must make an application for such a transfer. In 2013, the Legislature enacted, in the general pleading code, 12 O.S. Supp. 2013 §140.3 which provides:
A. If the court, upon motion by a party or on the court's own motion, finds that, in the interest of justice and for the convenience of the parties, an action would be more properly heard in another forum either in this state or outside this state, the court shall decline to exercise jurisdiction under the doctrine of forum non conveniens and shall stay, transfer or dismiss the action.
B. In determining whether to grant a motion to stay, transfer or dismiss an action pursuant to this section, the court shall consider:


1. Whether an alternate forum exists in which the action may be tried;
2. Whether the alternate forum provides an adequate remedy;
3. Whether maintenance of the action in the court in which the case is filed would work a substantial injustice to the moving party;
4. Whether the alternate forum can exercise jurisdiction over all the defendants properly joined in the action of the plaintiff;
5. Whether the balance of the private interests of the parties and the public interest of the state predominate in favor of the action being brought in an alternate forum; and
6. Whether the stay, transfer or dismissal would prevent unreasonable duplication or proliferation of litigation.
We have not applied this general statute specifically to probate proceedings, nor do we need to do so today.

[28] Title 58 O.S. 2011 §5, see note 2, supra.

[29] Title 58 O.S. 2011 §7, see page 14, supra.

[30] See, James v. Sanders, 1923 OK 690, ¶2, 218 P.877.




ROWE, J., with whom Darby, V.C.J. and Kane, J., join, concurring in part; dissenting in part:
¶1 I concur with the majority that the litany of venue options are prioritized pursuant to § 5. Venue lies first and foremost in the county where the decedent resided at the time of death. I further concur in overruling In the Matter of the Estate of Walker, 2018 OK CIV APP 63, 439 P.3d 424, and reversing the trial court with instructions to transfer the cause to Osage County, the county where the decedent undisputedly resided at the time of his death.
¶2 I cannot accede to the majority's holding that when "evidence is unclear" concerning the county in which the decedent resided at the time of death, that the jurisdiction of district courts to probate are "co-existive" pursuant to 58 O.S. 2011 § 7.[1]
¶3 In situations where evidence of residence is unclear, the majority interprets § 7 to allow venue to attach in the county where application for letters is first made. However, pursuant to the plain and unambiguous language in 58 O.S. 2011 §§ 6 and 7, these sections apply only to a decedent who is not a resident of Oklahoma. There can be no conflicting evidence of residence for a non-resident of this state.
¶4 Moreover, §§ 6 and 7 apply when a non-resident of this state has estate "in more than one county" and either a) dies out of state or b) dies within Oklahoma but "not leaving estate in the county where he died." Under these circumstances, the Legislature has provided the first of these counties in which application is made for letters testamentary or of administration "shall have" jurisdiction coextensive with the state in the settlement of the estate and excludes the jurisdiction of the district court of every other county.[2]
¶5 In Presbury v. County Court of Kay County, Oklahoma, 1923 OK 127, 213 P. 311, we held that § 5 is the applicable statute to determine venue when a decedent dies a resident of the state. Relevant here, we held in Presbury that § 7 "merely refers and is supplementary to" § 6 and that neither § 6 nor § 7 "has any application whatever to cases where the decedent resides within one of the counties of the state at the time of his death."[3] Id., ¶¶ 9-10.
¶6 Since we decided Presbury in 1923, there have been no substantive amendments to §§ 6 and 7. Importantly, § 7 refers to § 6 as its antecedent, using the phrase "in any of the cases above mentioned." After judicial construction of a statute, the Legislature's failure to amend the statute constitutes acquiescence to that construction. See In re Estate of Dicksion, 2011 OK 96, ¶ 5, 286 P.3d 283, 294.
¶7 Because the decedent died a resident of Oklahoma, today's opinion is necessarily limited to the application of 58 O.S. § 5. Accordingly, I respectfully dissent from today's opinion as it applies 58 O.S. §§ 6 and 7.

FOOTNOTES

[1] Opinion, ¶ 21.

[2] 58 O.S. 2011 § 6 provides:
When the estate of the decedent is in more than one county, he having died out of the state, and not having been a resident thereof at the time of his death, or being such nonresident and dying within the state, and not leaving estate in the county where he died, the district court of that county in which application is first made for letters testamentary or of administration, has exclusive jurisdiction of the settlement of the estate.
58 O.S. 2011 § 7 provides:
The district court of the county in which application is first made for letters testamentary or of administration in any of the cases above mentioned, shall have jurisdiction coextensive with the State in the settlement of the estate of the decedent and the sale and distribution of his real estate and excludes the jurisdiction of the district court of every other county.

[3] The applicable versions of §§ 6 and 7 were §§ 6194 and 6195, Revised Statutes 1910, respectively.
 
 
 
 




 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2018 OK CIV APP 63, 439 P.3d 424, IN THE MATTER OF THE ESTATE OF WALKER
Discussed at Length
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1988 OK 99, 769 P.2d 1302, 59 OBJ 2452, Allen v. State ex rel. Bd. of Trustees of Oklahoma Uniform Retirement System for Justices and Judges
Discussed
 1989 OK 55, 771 P.2d 614, 60 OBJ 958, Cooper v. Dix
Discussed
 1998 OK 8, 953 P.2d 1111, 69 OBJ 482, IN THE MATTER OF THE ESTATE OF SNEED
Discussed
 1939 OK 66, 87 P.2d 656, 184 Okla. 380, STOCK v. SENTINEL RURAL & LONG DISTANCE TEL. CO.
Discussed
 1939 OK 304, 93 P.2d 1078, 185 Okla. 433, GRIFFIN v. HANNAN
Discussed
 1993 OK 45, 871 P.2d 398, 64 OBJ 1255, Rodgers v. Higgins
Discussed
 1993 OK 162, 865 P.2d 1232, 65 OBJ 33, Hendrick v. Walters
Discussed
 1994 OK 114, 885 P.2d 657, 65 OBJ 3662, Estate of Eversole, Matter of
Discussed
 1935 OK 121, 40 P.2d 1064, 170 Okla. 449, OKFUSKEY v. CORBIN
Discussed
 1935 OK 170, 41 P.2d 815, 170 Okla. 612, ANDERSON v. JACKSON
Cited
 1935 OK 210, 41 P.2d 899, 171 Okla. 68, KIRK v. ALEXANDER
Cited
 1935 OK 242, 43 P.2d 115, 171 Okla. 575, In re DAVIS' ESTATE
Discussed at Length
 1956 OK 302, 303 P.2d 1116, WHITNEY v. COOK
Discussed
 1935 OK 1101, 58 P.2d 305, 177 Okla. 124, BREEDLOVE v. TULSA COUNTY COURT
Cited
 1921 OK 103, 196 P. 937, 81 Okla. 69, STATE ex rel. MONAHAWEE v. HAZELWOOD
Discussed at Length
 1964 OK 123, 392 P.2d 722, DAVIS v. SANDLIN
Discussed
 1967 OK 123, 431 P.2d 366, IN RE ESTATE OF LACY
Discussed
 1967 OK 144, 435 P.2d 131, STATE v. SUPERIOR COURT OF CREEK COUNTY
Discussed
 1923 OK 127, 213 P. 311, 88 Okla. 273, PRESBURY v. COUNTY COURT OF KAY COUNTY
Discussed at Length
 1923 OK 690, 218 P. 877, 95 Okla. 195, JAMES v. SANDERS
Discussed at Length
 1923 OK 725, 219 P. 350, 96 Okla. 6, WOLF v. GILLS
Discussed
 1995 OK 6, 890 P.2d 936, 66 OBJ 483, Stevens v. Blevins
Discussed
 1995 OK 40, 897 P.2d 268, 66 OBJ 1417, Matter of Estate of Maheras
Discussed
 2002 OK 90, 63 P.3d 9, IN THE MATTER OF THE ESTATE OF HOLCOMB
Discussed
 2005 OK 83, 125 P.3d 672, CHARLSON v. STATE ex rel. DEPT. OF PUBLIC SAFETY
Discussed
 1930 OK 547, 293 P. 1028, 146 Okla. 108, RICHARDS v. HUFF
Cited
 2007 OK 37, 160 P.3d 978, ST. JOHN MEDICAL CENTER v. BILBY
Discussed
 2008 OK 83, 194 P.3d 1269, IN THE MATTER OF THE ESTATE OF JACKSON
Discussed
 1996 OK 134, 937 P.2d 496, 68 OBJ 25, Bryant v. Commissioner of Dept. of Public Safety
Discussed
 1924 OK 368, 224 P. 986, 101 Okla. 228, COPELAND v. JOHNSON
Cited
 2011 OK 96, 286 P.3d 283, IN THE MATTER OF THE ESTATE OF DICKSION
Discussed
 1979 OK 128, 600 P.2d 857, IN MATTER OF ESTATE OF BROWN
Discussed
 1925 OK 845, 240 P. 727, 113 Okla. 182, In re CARTER'S ESTATE
Discussed
 1926 OK 293, 245 P. 632, 114 Okla. 177, SEWELL V. CHRISTISON Co. Judge
Discussed
 1999 OK 43, 990 P.2d 845, 70 OBJ 1560, Independent Finance Institute v. Clark
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 140.3, Stay, Transfer, or Dismissal of an Action Under Forum Non Conveniens
Discussed
Title 20. Courts
 Cite
Name
Level

 20 O.S. 30.5, Opinions - Publications
Cited
Title 58. Probate Procedure
 Cite
Name
Level

 58 O.S. 1, Probate Jurisdiction of District Court
Cited
 58 O.S. 5, Venue of Probate Acts
Discussed at Length
 58 O.S. 6, Venue
Discussed at Length
 58 O.S. 7, Jurisdiction
Discussed at Length
Title 75. Statutes and Reports
 Cite
Name
Level

 75 O.S. 171, Repealed
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA